**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BEN CRABB, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-0848 |
| | § | |
| UNITED STATES FEDERAL HIGHWAY, | § | |
| ADMINISTRATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This lawsuit challenges the Federal Highway Administration's approval of a highway-construction project in Houston. The plaintiffs are seven Houston residents, represented by one resident who is also an attorney. They sued the Federal Highway Administration, the United States Department of Transportation, and three agency officials, asserting violations of the Federal Aid Highways Act, the National Environmental Policy Act, the Administrative Procedure Act ("APA"), and the Fifth Amendment's Due Process Clause. The Texas Department of Transportation ("TxDOT") intervened as a defendant. (Docket Entry No. 69).

This lawsuit has proceeded slowly. The plaintiffs' complaint, filed in March 2011, violated Rule 8 of the Federal Rules of Civil Procedure; despite its great length, the complaint was very unclear about what claims the plaintiffs asserted and what relief they sought. Pleading challenges resulted, followed by several amendments. In July 2012, the court granted the parties' joint motion to stay to permit the defendants to conduct additional environmental-impact studies. The Federal Highway Administration filed a notice of final agency decision in September 2013. Another set of

1

pleading challenges and motions to dismiss, (Docket Entry Nos. 95, 96), led to a fourth amended complaint and another set of motions to dismiss. (Docket Entry Nos. 98, 109, 110). The plaintiffs have responded to the most recent motions to dismiss. (Docket Entry Nos. 111, 112).

Based on the pleadings, the motions and responses, the record, and the applicable law, the court grants the motions to dismiss in part and denies them in part. Given the number of amendments and the repeated inability to state certain claims, the dismissals of those issues are with prejudice and without leave to amend. A status conference and hearing is set for **March 26, 2015,** at 10:00 a.m., in Courtroom 11-B, to address the claim that remains.

The reasons for these rulings are explained below.

## I.     Background

The plaintiffs challenge the 290/610 highway project in Houston, Texas. The project runs 38 miles from Farm-to-Market Road 2920 to Interstate Highway Loop 610. TxDOT first evaluated the environmental impacts of the project in 2010, issuing a Final Environmental Impact Statement in May 2010. (Docket Entry No. 32, Administrative Record (AR) 839–41). The Federal Highway Administration issued a Record of Decision approving TxDOT's Final Environmental Impact Statement in August 2010. (Docket Entry No. 32, AR 945).

In March 2011, TxDOT completed its first reevaluation of the Final Environmental Impact Statement, focused on the first phase of the project. TxDOT completed a second reevaluation, focused on the area covered by the first part of the second project phase, in July 2012.

TxDOT completed a third reevaluation of the Final Environmental Impact Statement, focused on the area in the second part of the second project phase, in October 2012. TxDOT completed its latest Final Environmental Impact Statement reevaluation, the fourth, in August 2013. In this last

reevaluation, TxDOT studied the project's noise impacts and how they might be mitigated. TxDOT used the most recent traffic-noise model, TNM 2.5, that the Federal Highway Administration had approved. In the earlier reevaluations, TxDOT had used TNM 2.1, the then-approved traffic-noise model. TNM 2.5 replaced TNM 2.1 in April 2012. TxDOT's fourth and last reevaluation also examined the project's interim design phase and other minor design changes, the use of reversible lanes to accommodate peak traffic, tolling options, managed lanes, detention ponds, lighting, right-of-way changes, and schematic adjustments. (Docket Entry No. 85, Exs. 1–4 (Record of Decision and Appendices)).

The Federal Highway Administration issued a Revised Record of Decision in September 2013, approving the fourth TxDOT reevaluation of the Final Environmental Impact Statement. (Docket Entry No. 85). The Revised Record of Decision increased the number of planned noise abatement measures from seven to twenty. (Docket Entry No. 98 at 4). The federal defendants notified the court of the final agency action, and the case was reinstated. (Docket Entry No. 88). The defendants once again moved to dismiss the plaintiffs' complaint. (Docket Entry No. 95, 96). The plaintiffs filed a fourth amended complaint, (Docket Entry No. 98), and the defendants filed new motions to dismiss. (Docket Entry No. 109, 110). These motions are analyzed below.

## II.    The Motions to Dismiss for Lack of Subject-Matter Jurisdiction

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation

omitted).  Rule 12(b)(1) challenges to subject-matter jurisdiction may be facial or factual attacks. *See, e.g.*, *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012); *Russell v. City of Houston*, 808 F. Supp. 2d 969, 972 (S.D. Tex. 2011) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).  "A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges the court's jurisdiction based solely on the pleadings." *Russell*, 808 F. Supp. 2d at 972 (citing *Paterson*, 644 F.2d at 523). The pleading's allegations are presumed to be true, and "[i]f those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (citing *Paterson*, 644 F.2d at 523).  To the extent the motions to dismiss challenge subject-matter jurisdiction, they are facial challenges.

The defendants move under Rule 12(b)(1) to dismiss the claims arising under the National Environmental Policy Act and the Federal Aid Highway Act for lack of subject-matter jurisdiction. They contend that the plaintiffs have not identified a "final agency action" under either statute that allows the court to adjudicate the plaintiffs' claims against the federal government.  (Docket Entry Nos. 109, 110).

### B.      Analysis

Immunity precludes suit against the United States without the consent of Congress.  *See United States v. Mottaz*, 476 U.S. 834, 841 (1986); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The APA, 5 U.S.C. § 701 *et seq.*, provides a waiver of that immunity under certain conditions.  The waiver applies only if no other judicial remedies are available, *see El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health and Human Servs.*, 396 F.3d 1265, 1273–74 (D.C. Cir. 2005), and only to "final agency actions." *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 882

(1990).   To be final, the agency action "must mark the 'consummation' of the agency's decisionmaking process" and "be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"   *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal citations omitted).

The plaintiffs challenge the September 2013 Revised Record of Decision under the Federal Aid Highway Act, 23 U.S.C. § 109, and the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*  These statutory provisions do not create a private right of action.  The plaintiffs' claims must be asserted under the APA.  *See Ware v. U.S. Fed. Highway Admin.*, No. Civ. A. H-04-2295, 2005 WL 2416667, at *4 (S.D. Tex. Sept. 30, 2005), *aff'd* 255 Fed. App'x 838 (5th Cir. 2007) (citing *Allendale Neighborhood Ass'n v. Austin Transp. Study Policy Advisory Comm.*, 840 F.2d 258, 265 (5th Cir. 1988); *Noe v. Metro Atlanta Rapid Transit Auth.*, 664 F.2d 434, 436–39 (5th Cir. 1981)).

The defendants agree that the September 2013 Revised Record of Decision is a final agency action.  (Docket Entry No. 110 at 7).  Subject-matter jurisdiction is present as to the plaintiffs' APA claims challenging this decision.  The plaintiffs' fourth amended complaint also challenges the 2010 Record of Decision for this project, as well as the 2013 Revised Record of Decision, the Final Environmental Impact Statement and subsequent reevaluations of that statement, and environmental and noise studies.  The 2013 Revised Record of Decision approving the 290/610 highway project is the only final agency action and the action at issue in this case.  There is no subject-matter jurisdiction over the plaintiffs' challenges under the National Environmental Policy Act or the Federal Aid Highway Administration Act based on the earlier Records of Decision or earlier versions of the project.  The September 2013 Revised Record of Decision supercedes.

The plaintiffs' claims directed at earlier Records of Decision, earlier environmental impact

statements, earlier noise studies, and earlier versions of the project fail for another reason. Limitations bars the plaintiffs' claims arising from agency actions related to earlier versions of the project. *See* 28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues").

To the extent the plaintiffs challenge and seek relief based on agency actions other than the September 2013 Revised Record of Decision, their claims are dismissed for lack of subject-matter jurisdiction.

## III.   The Motions to Dismiss for Failure to State a Claim

### A.   Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and

conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief — including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. at 555). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* (quoting *Twombly*, 550 U.S. at 558).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to

amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).  Prior unsuccessful amendments may also justify granting dismissal without leave to amend, with prejudice.  *See United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (stating that "repeated failure to cure deficiencies with prior amendment" justifies denying leave to amend) (internal quotation omitted).

The plaintiffs' fourth amended complaint is still long, vague, often rambling, and confusing.  The court has construed it liberally despite the fact that it was drafted by a lawyer.  But the court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *accord Iqbal*, 556 U.S. at 677–79.  Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555); *accord Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012).

**B.      Analysis**

**1.      The Plaintiffs Have Not Stated a Claim for Failure to Comply with the Federal Aid Highway Act**

The plaintiffs allege that the defendants[1] violated the Federal Aid Highway Act, 23 U.S.C. § 109, and its implementing regulations, 23 C.F.R. § 772.1 *et seq.*, by failing to consider and propose

---

[1]  The plaintiffs allege that the Federal Highway Administration violated 23 U.S.C. § 109(i) and 23 C.F.R. § 772.1 *et seq.*  (Docket Entry No. 98 at p. 7).  Later in the same section of the fourth amended complaint, the plaintiffs allege that both TxDOT and the Federal Highway Administration violated 23 C.F.R. § 772.1 *et seq.*  Title 23 U.S.C. § 109 prohibits the Secretary of Transportation from approving project plans that do not include adequate measures to implement noise-level standards.  Its implementing regulations, 23 C.F.R. § 772.1 *et seq.*, require state agencies such as TxDOT to follow a prescribed noise-abatement process.  The regulatory structure and the substance of the complaint appear to indicate that the 23 U.S.C. § 109(i) claims are asserted against the federal defendants and the 23 C.F.R. § 772.1 *et seq.* claims are asserted against TxDOT.  The plaintiffs, however, repeatedly allege that "the defendants" violated the regulations or statutes, often without distinguishing between the duties imposed on the federal agency or the state agency.

adequate noise-abatement measures.

The Federal Aid Highway Act imposes certain requirements before a state may receive federal highway funds.  The state agency must evaluate future noise impacts, propose abatement measures, and then evaluate the proposed measures for feasibility and reasonableness.  *See* 25 C.F.R. § 772.1 *et seq*.  The United States Secretary of Transportation may not approve a project without findings that such plans "include adequate measures to implement the appropriate noise level standards."  23 U.S.C. § 109(i).

### a.       Evaluating Traffic-Noise Impacts

The first step in the Federal Aid Highway Act's three-step process for evaluating and abating noise impacts is to determine whether a proposed project will result in "traffic noise impacts."  23 C.F.R. § 772.11(a); *Prairie Band Pottawatomie Nation v. Fed. Hwy. Admin.*, 684 F.3d 1002, 1009 (10th Cir. 2012) ("The effect of the first stage of a § 772 analysis is only to determine whether there will be noise impacts.").  The agency must evaluate existing noise levels, predict future noise levels, and compare the two for each alternative under consideration.  *Id*.  Any analysis of noise impacts "must use the [Federal Highway Administration] Traffic Noise Model" or an alternative that the Federal Highway Administration approves.  *Id*. § 772.9(a).

The current Federal Highway Administration-approved Traffic Noise Model is version 2.5. To analyze traffic-noise impacts, the state agency must use the current Traffic Noise Model, and, in the noise model, must assume the use of an  "[a]verage pavement type" and consider "traffic characteristics that would yield the worst traffic noise impact for the design year."  *Id*. § 772.9(b), (d).

The plaintiffs allege that TxDOT performed this analysis incorrectly.  They first allege that

TxDOT should not have used "average payment type" in the traffic-noise-impact analysis under Traffic Noise Model 2.5, but should have calculated future noise levels based on "longitudinal tining," the pavement type that TxDOT intends to include in this project. "Longitudinal tining" creates less traffic noise than "transverse tining," another commonly used pavement type. The use of "longitudinal" rather than "transverse tining" is one of the noise-abatement measures TxDOT has proposed for the project.[2] (Docket Entry No. 98 at ¶ 68). The plaintiffs allege that they "suspect, but cannot replicate" that TxDOT has underestimated future noise levels because the agency used the wrong type of pavement in its Traffic Noise Model 2.5 analysis. (*Id.* at ¶ 69).

The plaintiffs' suspicion falls short of "information and belief." Suspicion is speculation. A speculative allegation cannot state a plausible claim. *Plotkin*, 407 F.3d at 696; *accord Iqbal*, 556 U.S. at 677–79. The complaint does not appear to allege even a speculative violation of 23 C.F.R. § 772.9(b). The plaintiffs acknowledge in their fourth amended complaint that "[a]verage pavement is currently the only surface allowed under 23 CFR 772.9(b) [*sic*]." (Docket Entry No. 98 at ¶ 69). The plaintiffs appear to allege that the defendants violated this regulation by using the type of pavement the regulation requires in performing the noise-impact analysis. This allegation does not state a plausible claim. This claim is dismissed, without leave to amend, because repeated amendments have not stated a claim and further efforts to amend would be futile.

The plaintiffs also allege that TxDOT failed to consider the "worst hour of the year noise

---

[2] The plaintiffs do not define or explain "longitudinal tining" or "transverse tining" in their fourth amended complaint. Publicly available sources indicate that tining is a grooved texture applied to concrete to provide friction and skid resistance. Longitudinal tining is applied along the length of the road and is quieter than transverse tining, in which the grooved texture is applied perpendicularly to the road. *See* Pavement Interactive, "The Feel of the Road — Texturing Concrete Pavements," April 1, 2013, <http://www.pavementinteractive.org/2013/04/01/the-feel-of-the-road-texturing-concrete-pavements/> (last accessed March 6, 2015).

levels," as required by 23 C.F.R. § 772.9(d).  (*Id.* at ¶¶ 68–70).  The regulation requires that the state

agency predict traffic-noise levels using "traffic characteristics that would yield the worst traffic

noise impact for the design year."  23 C.F.R. § 772.9(d).  The plaintiffs allege that "the worst hour

of the year" is "usually in the morning before the major highways are congested or after the evening

congestion," because "truck noise can dominate" at those times.  (Docket Entry No. 98 at ¶ 52).

However, the plaintiffs' fourth amended complaint also alleges that "[i]t is not clear" how TxDOT

"collected, obtained, or analyzed" the data used in its noise-impact model.  (*Id.* at ¶ 53).  The fourth

amended complaint makes clear that the plaintiffs do not know what traffic situations were used to

calculate noise impact.  (*Id.* at ¶¶ 53, 71–72).  The allegation that TxDOT did not use the proper

figures to calculate the "worst traffic noise impact for the design year" is speculative.  The plaintiffs

do not allege that TxDOT used data the regulations do not allow.  Instead, the plaintiffs allege that

because they do not know when or how the defendants collected the traffic-noise data, it was done

in violation of the regulations.  This claim does not state a plausible claim for relief.  The claim that

the defendants violated 23 C.F.R. § 772.9(d) is dismissed, without leave to amend, because, for the

reasons stated earlier, amendment would be futile.

The plaintiffs alternatively allege that TxDOT violated regulatory requirements to fully

disclose how it ran the traffic-noise model and what traffic-noise-level assumptions it used so that

the plaintiffs can "replicate what is being reported."  (*Id.* at ¶ 45).  The plaintiffs allege that TxDOT

violated the regulations because "[t]here is no disclosure or transparency and no explanatory

information regarding truck speed, counts, and noise."  (*Id.* at ¶ 54).  The plaintiffs do not specify

what regulation TxDOT violated.  The plaintiffs cite no regulations requiring detailed public

disclosure of all of the factors considered or all the assumptions the state agency used in applying

the traffic-noise model.  Nor do the plaintiffs sufficiently allege that the defendants violated specific

regulations requiring that traffic noise be measured at specific times of day or locations, or under

certain conditions.  The defendants have filed a large administrative record in this case.  The record

includes significant information and disclosures about the traffic-noise model used.  This claim is

dismissed, without leave to amend, for the reasons stated above.

The plaintiffs also allege that the traffic-noise model TxDOT used failed to analyze "all noise

impacts within a neighborhood area" as opposed to "just impacts on the boundary."  (*Id.* at ¶ 47).

The plaintiffs argue that TxDOT should have evaluated noise impacts "maybe 3 or 5+ rows back"

from the boundary, including all homes in the "line of sight" of "heavy truck noise" coming from

the highway. (*Id.*; Docket Entry No. 111 at 12; Docket Entry No. 112 at 13).  The plaintiffs contend

that this analysis would have shown that, in some neighborhoods, future noise levels for homes away

from the highway boundary would exceed acceptable upper limits.  (Docket Entry No. 112 at 13).

The plaintiffs have cited no cases, statutes, or regulations supporting the proposition that

noise impacts must be measured and equally considered for all properties that can see, or be seen

from, a highway.  At the second stage of noise-impact planning, TxDOT was required to consider

how many properties, or "impacted receptors," could be benefitted by proposed abatement measures.

23 C.F.R. § 772.13(d)(1).  But the regulations do not require TxDOT to give equal consideration to

all possibly affected properties in evaluating traffic-noise impacts.  The regulation states that "[i]n

determining traffic noise impacts, a highway agency shall give primary consideration to exterior

areas where frequent human use occurs."  *Id.* § 772.11(b).  The regulations do not further specify

what areas within nearby neighborhoods the government agency must study.  The absence of

specificity has led courts to recognize that "[s]etting the boundaries of the region to be analyzed

involve[s] technical and scientific judgments within the government's area of expertise." *Prairie Band Pottawatomie Nation*, 684 F.3d at 1011 (quoting *San Juan Citizens Alliance v. Stiles*, 654 F.3d 1038, 1057 (10th Cir. 2011)).

The plaintiffs' claim that TxDOT violated the regulations by failing to consider homes away from the boundaries in the noise-impact analysis is dismissed, without leave to amend, because further amendment would be futile.

### b.    Abatement Measures

If the state agency determines at the first stage of a § 772 analysis that noise impacts will occur, the agency must then consider abatement measures. *See id.* at 1009 ("If there will be noise impacts, then the government is required to proceed to stage two and consider noise abatement measures."). The plaintiffs allege that TxDOT did not conduct this analysis properly. The plaintiffs allege that the record "failed to indicate any evidence that [TxDOT] has explored alternative abatement measures and the count of benefited homes, and . . . failed to show allowed budget calculations or build cost estimates for potential abatement measures." (Docket Entry No. 98 at ¶ 55). The plaintiffs also allege that the federal defendants violated 23 U.S.C. § 109(i) by approving plans that did not include "adequate measures" to meet the noise standards described in the statute's implementing regulations.

If the state agency determines that a project will create noise impacts, "noise abatement shall be considered and evaluated for feasibility and reasonableness." 23 C.F.R. § 772.13(a). A noise-abatement measure is feasible if it achieves at least 5 dB(A) of highway traffic noise reduction at "impacted receptors" — or affected properties — and is possible to design and construct. *Id.* § 772.13(d)(1). A measure is reasonable if the benefited property owners and residents view it as

desirable. *Id.* § 772.13(d)(2). The state agency must consider cost-effectiveness and noise-reduction

goals, and may also consider other enumerated factors.[3] *Id.* The Federal Highway Administration

may not adopt a Record of Decision unless the state highway agency has identified and documented

both the feasible and reasonable noise-abatement measures and the noise impacts for which no

feasible and reasonable abatement measures exist. *Id.* § 772.13(g). The Federal Highway

Administration may not "approve project plans and specifications unless feasible and reasonable

noise abatement measures are incorporated into the plans and specifications." *Id.* § 772.13(h); *see*

23 U.S.C. § 109(i).

The plaintiffs allege that because TxDOT proposed specific abatement measures for certain

neighborhoods and less robust measures for other neighborhoods, TxDOT must have violated the

regulations. For example, Stone Gate will receive a 20-foot noise wall and Oak Forest will receive

only a 14-foot noise wall. (Docket Entry No. 98 at ¶¶ 57–62). The plaintiffs allege that TxDOT

should have required a 20-foot wall for Oak Forest as well. (*Id.* at ¶ 62 ("Why doesn't Oak Forest

get a 20 feet high wall ground wall between the highway and the access road[?]")). The plaintiffs

also allege that because certain neighborhoods will get noise-abatement measures, and other

neighborhoods will not, TxDOT must have violated the regulations. (*See id.* at ¶¶ 63–66

("Brookwoods Estates is not slated to get any abatement of any kind. This has to be a gigantic

mistake with the model for some unknown reason.") (emphasis in original)).

The Federal Aid Highway Act does not require that all possible noise-abatement measures

be implemented. The test for whether noise-abatement measures must be installed in a given area

---

[3] These additional factors are: "Date of development, length of time receivers have been exposed
to highway traffic noise impacts, exposure to higher absolute highway traffic noise levels, changes between
existing and future build conditions, percentage of mixed zoning development, and use of noise compatible
planning concepts by the local government." 23 C.F.R. § 772.13(d)(v).

is not satisfied simply because these measures were used in other, even nearby, locations. Indeed, the plaintiffs' complaint acknowledges that, although they allege the defendants should have placed a 20-foot noise wall in the Oak Forest neighborhood similar to the one used for the Stone Gate neighborhood, the wall would be "less effective" in Oak Forest and would have to be "next to the main-lanes between the access road with overlapping walls for the entrance and exit ramps between the main lanes and the access road with overlapping noise walls," a condition not required for the Stone Gate area. (Docket Entry No. 111 at 9).

Nor is the fact that a neighborhood's residents have expressed concerns about noise impacts a basis to require an agency to use noise-abatement measures in that neighborhood. (*See* Docket Entry No. 98 at ¶¶ 65–66) ("Brookwoods Estates has the distinction of having sent 200 petitions to Governor Perry some 3 or 4 years ago regarding their concern about coming noise impacts in their neighborhood" but is "not slated to get any abatement of any kind." (emphasis omitted)). "[Federal Highway Administration] regulations require *consideration* of noise mitigation measures at the levels of increased noise. They do not require the agency to implement mitigation measures that are not 'reasonable and feasible.'" *See Ware v. US Fed. Hwy. Admin.*, 2006 WL 696551, at *24 (emphasis in original). To the extent the plaintiffs claim that the defendants violated 23 U.S.C. § 109(i) by failing to install noise-abatement measures in a certain neighborhood, because they were installed in other areas or because residents complained, the claim fails as a matter of law. It is dismissed without leave to amend.

In summary, to the extent the plaintiffs allege that certain neighborhoods will receive insufficient noise-abatement measures because Traffic Noise Model 2.5 is flawed or because the defendants incorrectly evaluated future noise impacts, these claims are derivative of the claims

already rejected.  The plaintiffs' conclusory allegations that the defendants were required to use factors other than those the regulation required, or to measure noise impacts at times or locations other than those the regulations required, do not state a plausible claim.  To the extent the plaintiffs allege that the defendants violated 23 C.F.R. § 772.13 by failing to propose sufficient noise-abatement measures in the Brookwoods Estates and Oak Forest areas, the plaintiffs have not stated a plausible claim.  These claims are dismissed, without leave to amend.

### 2.     The Plaintiffs Have Not Stated a Claim for Denial of Procedural Due Process

The plaintiffs also challenge the abatement measures imposed in the Revised Record of Decision on the basis of procedural due process.  The plaintiffs allege that TxDOT improperly discriminated by refusing to provide noise-abatement measures to owners of properties away from the highway boundary and by not soliciting a wider range of residents' viewpoints on proposed abatement measures.  The plaintiffs allege that the "Noise Workshops" TxDOT conducts to solicit the views of residents who may be impacted by proposed traffic noise and noise-abatement measures lack basic procedural protections, such as the right to know how others voted, the right to change one's vote later, and the right to administrative or judicial recourse against the results of the vote. (Docket Entry No. 98 at pp. 26–29).  The plaintiffs assert a procedural due process claim under the Fifth Amendment of the Constitution.[4]

"To state a procedural due-process claim, a plaintiff must allege (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (5th Cir. 2008).  "[P]roperty interests . . . are not created

---

[4] In their fourth amended complaint, the plaintiffs state that these claims are asserted "alternatively under APA § 704." (Docket Entry No. 98 at p. 23).  Their claims for violation of due process are framed in terms of the Fifth Amendment.  The APA claims are discussed above.

by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Broyles v. Texas*, 618 F. Supp. 2d 661, 687–88 (S.D. Tex. 2009), *aff'd* 381 F. App'x 370 (5th Cir. 2010) (quoting *Mahone v. Addicks Utility Dist. of Harris Cnty.*, 836 F.2d 921, 930 (5th Cir. 1988) (concluding that because state law provided no mechanism for a landowner to compel municipality to annex land, the plaintiff landowner who sought to have his land annexed had no due process right to the annexation)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

The regulations require TxDOT to conduct a noise-impact analysis focusing on owners at the boundary between the highway and the properties at issue. If a significant noise impact is found, TxDOT must then propose feasible and reasonable noise-abatement measures. Feasibility and reasonableness are evaluated considering all the property owners who will be affected, not only or primarily boundary-property owners.

The plaintiffs contend that they have a protected property interest in "recourse to procedures to protect their land from unlawful highway noise impacts for which there would otherwise be federal[] funding to abate," and complain again that some neighborhoods are getting more noise-abatement measures than others. (Docket Entry No. 98 at pp. 29–30; Docket Entry No. 112 at 19). The statute and its regulations do not create an individual property interest in specific noise-abatement measures. Instead, the federal and state agencies are required to implement measures only if they are feasible (as measured by noise-reduction effectiveness and possibility of design) and reasonable (as measured by property owners's indications that they want the measures, the cost-

effectiveness of the measures, and the noise-reduction design goals, as well as other factors that the agency may choose to consider — or not). The regulations do not require TxDOT to allocate the same noise-abatement measures among neighborhoods, or to provide abatement measures based on residents' requests or protests. The plaintiffs have not alleged a basis to conclude that property owners or residents in specific neighborhoods had a constitutionally protected property interest in certain noise-abatement measures.

The plaintiffs appear to contend that they have a property interest in additional access to information and additional opportunities to seek redress than current TxDOT noise-workshop procedures provide. But the plaintiffs acknowledge in their fourth amended complaint that "[t]here is absolutely nothing in 23 USC 109(i) or the 23 CFR Part 772 [*sic*] regulations and comments mentioning procedures for workshops," and "[t]here is nothing in the federal Guidance mentioning workshops" or "how these workshops are to be conducted and whether they are to have any procedural safeguards." (Docket Entry No. 98 at ¶ 189). To state a due process claim, the plaintiffs must point to a state-created interest that triggers due process protections. *Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)). The plaintiffs admit that the statute and regulations create no such interests. The plaintiffs do not have a protected property interest in having the workshops conducted in a particular way.

The plaintiffs object to the fact that the owners of property located along the highway boundary, frequently commercial properties, are given an opportunity to inform TxDOT as to whether they want a proposed boundary wall or other proposed noise-abatement measure, while owners whose properties are away from the boundary do not have their views solicited. (*Id.* at ¶ 182). The plaintiffs also claim that when TxDOT holds noise workshops to evaluate proposed

noise-abatement measures, not all residents are invited or given an opportunity to vote on the proposed measures. (*Id.* at ¶ 195). The plaintiffs, who live near the highway but not directly beside it, object to this method of permitting adjacent property owners to "veto" proposed abatement methods and claim that it violates their due process rights. But the plaintiffs have pointed to no statutory, regulatory, or case-law authority prohibiting this approach to noise workshops.

The procedural due process claims are dismissed, without leave to amend, because, for the reasons identified above, amendment would be futile.

### C.     The Plaintiffs Have Stated a Claim for Violation of Section 4(f)

The plaintiffs allege that the "Defendants"[5] have not complied with their obligations, under the Federal Aid Highway Act and the Department of Transportation Act, to consider the impacts on Memorial Park and the Houston Arboretum and Nature Center. The relevant provisions of the two acts, 23 U.S.C. § 138 and 49 U.S.C. § 303, contain substantially the same language and are together referred to as "section 4(f)." *See, e.g., Druid Hills Civic Ass'n, Inc. v. Fed. Hwy. Admin.,* 772 F.2d 700, 704 (11th Cir. 1985); *Coal. to Pres. McIntire Park v. Mendez,* 862 F. Supp. 2d 499, 509 (W.D. Va. 2012).

Section 4(f) allows the Secretary of Transportation to approve a federal highway project that uses public park land only under limited conditions. First, the Secretary must find that "there is no prudent and feasible alternative to using that land." 49 U.S.C. § 303(c). Next, if the Secretary determines that there are no feasible and prudent alternatives to using the park land for the project, the Secretary must ensure that the project includes "all possible planning to minimize harm to the

---

[5] The plaintiffs assert section 4(f) claims against "Defendants." (Docket Entry No. 98 at p. 18). Section 4(f) imposes obligations on the Secretary of Transportation. It appears that the section 4(f) claims are asserted against the federal defendants.

park . . . resulting from the use." *Id.*; *Citizens for Smart Growth v. Sec'y of Dep't of Transp.*, 669 F.3d 1203, 1216 (11th Cir. 2012). The Secretary's section 4(f) evaluation is to be completed before work on the project begins. *Defenders of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 400 (4th Cir. 2014); *Corridor H Alternatives, Inc. v. Slater*, 166 F.3d 368, 373 (D.C. Cir. 1999).

The Revised Record of Decision states that "[n]o publicly owned parklands, recreation areas, or wildlife and waterfowl refuge of national, state, or local significance are located in the project area." (Docket Entry No. 85, Ex. 1 at 9). The plaintiffs allege that because the defendants concluded that no park lands were "used," they did not conduct a section 4(f) analysis before approving the project. (Docket Entry No. 111 at 11). The plaintiffs allege that Memorial Park and the Houston Arboretum and Nature Center were in fact "used" in the project.

"Use" is broadly construed. It encompasses constructive use of park land based on a project that is proximate to, but does not transverse, the park land. 23 C.F.R. § 774.17; *see, e.g.*, *Citizen Advocates for Responsible Expansion, Inc. (I–CARE) v. Dole*, 770 F.2d 423 (5th Cir. 1985); *Adler v. Lewis*, 675 F.2d 1085, 1092 (9th Cir. 1982) (a highway project that was next to a park "used" the park).

The regulations define "use" to include both physical and "constructive use." 23 C.F.R. § 774.15(e)(1); *Prairie Band Pottawatomie Nation*, 684 F.3d at 1015. A "constructive use" occurs when:

> [T]he transportation project does not incorporate land from a section 4(f) resource, but the project's proximity impacts are so severe that the protected activities, features, or attributes that qualify a resource for protection under section 4(f) are substantially impaired. Substantial impairment occurs only when the protected activities, features, or attributes of the resource are substantially diminished.

23 C.F.R. § 771.135(p)(2).

A project can constructively use park land if the project produces severe noise impacts within the park. 23 C.F.R. § 774.15(e)(1); *see Audubon Naturalist Soc'y of Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 679 (D. Md. 2007). Although a park's proximity to a project, standing alone, is not enough for a constructive use, *Audubon Naturalist Soc'y of Cent. Atl. States*, 524 F. Supp. 2d at 679, park land is constructively used if "the project's impacts are so severe that the protected activities, features, or attributes that qualify a resource for protection under section 4(f) are substantially impaired." 23 C.F.R. § 771.135(p)(2).

The plaintiffs have the ultimate burden of showing that park land will be constructively used. *Florida Keys Citizens Coal., Inc. v. U.S. Army Corps of Engineers*, 374 F. Supp. 2d 1116, 1153 (S.D. Fla. 2005) (citing *Sierra Club v. Lynn*, 502 F.2d 43, 52 (5th Cir. 1974)). At the pleadings stage, the plaintiffs have "the burden of alleging facts which, if taken as true, show that the contemplated project will 'use' in some significant way parkland." *Citizen Advocates for Responsible Expansion, Inc. (I-Care)*, 770 F.2d at 441.

The plaintiffs allege that the additional traffic created by this highway project will increase noise levels in Memorial Park and the Arboretum beyond acceptable levels. (Docket Entry No. 98 at pp. 20–21). Unlike their other claims, such as those based on criticisms of the traffic-noise model that the regulations required the defendants to use, these claims allege that the noise levels the defendants measured showed that the project would constructively use park lands, but the defendants failed to conduct a section 4(f) analysis. (*Id.* at pp. 21–22). These allegations are sufficient to state a claim. They are not dismissed.

The plaintiffs' remaining claims in this section of their complaint are vague and rambling. The plaintiffs complain that the defendants failed to properly evaluate noise levels in 1991, 1992,

and 2001.  These claims do not challenge final agency actions and, in any event, are time-barred.
*See* 28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred
unless the complaint is filed within six years after the right of action first accrues").  These remaining
claims are dismissed without leave to amend, because amendment would be futile.

## IV.  Conclusion

The motions to dismiss are granted in part and denied in part.  Only the plaintiffs' claims for
violation of section 4(f), 23 U.S.C. § 138 and 49 U.S.C. § 303, survive.  The remaining claims are
dismissed.  A status conference and hearing is set for **March 26, 2015**, at 10:00 a.m., in Courtroom
11-B, to address the claim that remains.

SIGNED on March 9, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge